IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| CHARLES L.,[1]<br><br>                  Plaintiff,<br>  v.<br><br>KILOLO KIJAKAZI,[2] Acting Commissioner of Social Security,<br><br>                  Defendant. | Case No. 1:21-cv-00023-RRB<br><br>**ORDER REMANDING FOR FURTHER PROCEEDINGS** |

## DECISION AND ORDER

On or about July 3, 2019, Claimant Charles L. ("Plaintiff") protectively filed an application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("the Act"),[3] alleging disability

---

[1] Plaintiff's name is partially redacted in compliance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum, Committee on Court Administration and Case Management of the Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2] Kilolo Kijakazi is now the Acting Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* section 205(g) of the Social Security Act, 42 U.S.C. 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

[3] Title II of the Social Security Act provides benefits to disabled individuals who are insured by virtue of working and paying Federal Insurance Contributions Act (FICA) taxes for a certain amount of time. Title XVI of the Social Security Act is a needs-based program funded by general tax revenues designed to help disabled individuals who have low or no income. Plaintiff brought claims under Titles II and XVI. Although each program is governed by a separate set of regulations, the regulations governing disability determinations are substantially the same for both programs. *Compare* 20 C.F.R. §§ 404.1501–

beginning June 20, 2019.[4] Plaintiff has exhausted his administrative remedies and filed a Complaint seeking relief from this Court.[5] Plaintiff's Opening Brief asks the Court to reverse and remand this matter for further administrative proceedings.[6] The Commissioner filed an Answer and Response Brief in Opposition.[7] Plaintiff filed a Reply Brief.[8] Oral argument was not requested and was not necessary to the Court's decision. This Court has jurisdiction to hear an appeal from a final decision of the Commissioner of Social Security.[9] For the reasons set forth below, the Commissioner's decision is reversed and remanded for further administrative proceedings.

## I. STANDARD OF REVIEW

A decision by the Commissioner to deny disability benefits will not be overturned unless it either is not supported by substantial evidence or is based upon legal error.[10] "Substantial evidence" has been defined by the United States Supreme Court as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[11] Such evidence must be "more than a mere scintilla," but may be "less than

---

1599 (governing disability determinations under Title II) *with* 20 C.F.R. §§ 416.901–999d (governing disability determinations under Title XVI). For convenience, the Court cites the regulations governing disability determinations under both titles.

[4] Administrative Record ("A.R.") 15, 340. The application summaries, not the applications themselves appear in the Court's record. Other documents in the file list July 26, 2019, as the filing date. See A.R. 223, 230. However, a protective filing date establishes the earliest possible application date based on a claimant's verbal or written statement of intent to file for benefits. *See* 20 C.F.R. §§ 416.340–350. Therefore, July 3, 2019, shall be used as Plaintiff's application date.

[5] Docket 1 (Plaintiff's Compl.).
[6] Docket 17 (Plaintiff's Br.).
[7] Docket 12 (Answer); Docket 18 (Commissioner's Br.).
[8] Docket 19 (Reply).
[9] 42 U.S.C. § 405(g).
[10] *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990)).
[11] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of New York v. NLRB*, 305 U.S. 197, 229 (1938)).

*Charles L. v. Kijakazi*                                                Case No. 1:21-cv-00023-RRB
Order Remanding for Further Proceedings                      Page 2 of 20
Case 1:21-cv-00023-RRB    Document 20    Filed 11/29/22    Page 2 of 20

*Charles L. v. Kijakazi*      Case No. 1:21-cv-00023-RRB
Order Remanding for Further Proceedings      Page 2 of 20
Case 1:21-cv-00023-RRB    Document 20    Filed 11/29/22    Page 2 of 20

a preponderance."[12] In reviewing the agency's determination, the Court considers the evidence in its entirety, weighing both the evidence that supports and that which detracts from the administrative law judge ("ALJ")'s conclusion.[13] If the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.[14]

A reviewing court may only consider the reasons provided by the ALJ in the disability determination, and "may not affirm the ALJ on a ground upon which he did not rely."[15] An ALJ's decision will not be reversed if it is based on "harmless error," meaning that the error "is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity."[16] Finally, the ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered."[17] This duty exists "even when a claimant is represented by counsel."[18]

## II. DETERMINING DISABILITY

The Social Security Act ("the Act") provides for the payment of disability insurance to individuals who have contributed to the Social Security program and who suffer from a physical or mental disability.[19] In addition, Supplemental Security Income

---

[12] *Id.*; *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).
[13] *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).
[14] *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (citing *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).
[15] *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).
[16] *Brown-Hunter v. Colvin,* 806 F.3d 487, 492 (9th Cir. 2015) (internal quotations and citations omitted).
[17] *Smolen v. Chater,* 80 F.3d 1273, 1288 (9th Cir. 1996) (quoting *Brown v. Heckler,* 713 F.2d 441, 443 (9th Cir. 1983)); *superseded in part by statute on other grounds*, 20 C.F.R. § 416.929(c)(3). *See also Garcia v. Comm'r of Soc. Sec.,* 768 F.3d 925, 930 (9th Cir. 2014).
[18] *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001).
[19] 42 U.S.C. § 423(a).

("SSI") may be available to individuals who do not have insured status under the Act but who are age 65 or older, blind, or disabled.[20] Disability is defined in the Act as follows:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.[21]

The Act further provides:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.[22]

The Commissioner has established a five-step process for determining disability within the meaning of the Act.[23] A claimant bears the burden of proof at steps one through four in order to make a prima facie showing of disability.[24] If a claimant establishes a prima facie case, the burden of proof then shifts to the agency at step five.[25]

---

[20] 42 U.S.C. § 1381a.
[21] 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).
[22] 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).
[23] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).
[24] *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1096 n.1 (9th Cir. 2014) (quoting *Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007)); s*ee also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).
[25] *Treichler*, 775 F.3d at 1096 n.1; *Tackett*, 180 F.3d at 1098 (emphasis in original).

The Commissioner can meet this burden in two ways: "(a) by the testimony of a vocational expert, *or* (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2."[26]

The steps, and the ALJ's findings in this case, are as follows:

**Step 1.** Determine whether the claimant is involved in "substantial gainful activity" (SGA).[27] *The ALJ determined that Plaintiff had not engaged in SGA since June 20, 2019, the alleged onset date.*[28]

**Step 2.** Determine whether the claimant has a medically severe impairment or combination of impairments. A severe impairment significantly limits a claimant's physical or mental ability to do basic work activities and does not consider age, education, or work experience. The severe impairment or combination of impairments must satisfy the twelve-month duration requirement.[29] *The ALJ determined that Plaintiff had the following severe impairments: lumbar spine disorder and obesity. The ALJ found Plaintiff's hyperlipidemia and left arm injuries to be non-severe impairments.*[30] *The ALJ found Plaintiff had no medically determinable psychological impairment.*[31]

**Step 3.** Determine whether the impairment or combination of impairments meet(s) or equal(s) the severity of any of the listed impairments found in 20 C.F.R. pt. 404,

---

[26] *Tackett*, 180 F.3d at 1101.
[27] 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).
[28] A.R. 18. Although Plaintiff had worked since the alleged onset date, the ALJ determined his earnings did not constitute SGA. *Id.*
[29] 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).
[30] A.R. 18.
[31] A.R. 23. The ALJ later stated that even if she had found Plaintiff's mental impairment medically determinable, she would find it non-severe. A.R. 24. Nevertheless, she found Plaintiff's mental impairments cause no more than a mild limitation in functioning. A.R. 25.

*Charles L. v. Kijakazi*            Case No. 1:21-cv-00023-RRB
Order Remanding for Further Proceedings            Page 5 of 20
Case 1:21-cv-00023-RRB   Document 20   Filed 11/29/22   Page 5 of 20

subpt. P, app.1, precluding substantial gainful activity. If the impairment(s) is(are) the equivalent of any of the listed impairments, and meet(s) the duration requirement, the claimant is conclusively presumed to be disabled. If not, the evaluation goes on to the fourth step.[32] *The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.*[33]

Before proceeding to step four, a claimant's residual functional capacity ("RFC") is assessed.[34] Once determined, the RFC is used at both step four and step five. An RFC assessment is a determination of what a claimant is able to do on a sustained basis despite the limitations from her impairments, including impairments that are not severe.[35] *The ALJ determined that Plaintiff had the residual functional capacity to perform light work with the following exertional limitations: with the normal workday, he can stand up to one hour at a time for up to three hours, he can walk thirty minutes at a time for up to two hours, and he can sit up to two hours at a time for up to six hours. He can occasionally climb ramps or stairs, stoop, kneel, crouch, and crawl. He can never climb ladders, ropes, or scaffolds. He can frequently balance. He must avoid all unprotected heights and "avoid concentrated exposure to the operational control of moving machinery."*[36]

---

[32] 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).
[33] A.R. 18–19.
[34] 20 C.F.R. § 416.945.
[35] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).
[36] A.R. 19 (hearing decision), 60 (hearing transcript).

Charles L. v. Kijakazi  Case No. 1:21-cv-00023-RRB
Order Remanding for Further Proceedings  Page 6 of 20
Case 1:21-cv-00023-RRB   Document 20   Filed 11/29/22   Page 6 of 20

**Step 4.** Determine whether the claimant is capable of performing past relevant work.[37] At this point, the analysis considers whether past relevant work requires the performance of work-related activities that are precluded by the claimant's RFC. If the claimant can still do her past relevant work, the claimant is deemed not to be disabled.[38] Otherwise, the evaluation process moves to the fifth and final step. *The ALJ determined that Plaintiff was not able to perform any of his past relevant work.*[39]

**Step 5.** Determine whether the claimant is able to perform other work in the national economy in view of her age, education, and work experience, and in light of the RFC. If so, the claimant is not disabled. If not, the claimant is considered disabled.[40] *The ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including office helper (DOT#239.567-010, light, svp-2), storage rental clerk (DOT #295.367-026, light, svp-2), charge account clerk (DOT #205.367-014, sedentary, svp-2), and document preparer (DOT #249.587-018, sedentary, svp-2).*[41]

The ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from June 20, 2019, the alleged onset date, through March 31, 2021, the date of the ALJ's decision.[42]

---

[37] Past relevant work is work performed in the last 15 years, that was substantial gainful activity, and that lasted long enough for the individual to learn to do it. 20 C.F.R. §§ 404.1560, 404.1565, 416.965.
[38] 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).
[39] A.R. 25.
[40] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).
[41] A.R. 27.
[42] A.R. 16, 28.

Charles L. v. Kijakazi  Case No. 1:21-cv-00023-RRB
Order Remanding for Further Proceedings  Page 7 of 20
Case 1:21-cv-00023-RRB   Document 20   Filed 11/29/22   Page 7 of 20

## III. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff was born in 1977 and met the SSA definition of a "younger individual (age 18-49)" for the entire relevant period.[43] Plaintiff met the insured status requirements for DIB benefits through December 31, 2023.[44] Plaintiff applied for disability benefits on July 3, 2019, alleging disability beginning June 20, 2019.[45] On December 13, 2019, the Social Security Administration ("SSA") determined Plaintiff was not disabled under the applicable rules.[46] Plaintiff requested a hearing before an ALJ.[47]

Plaintiff testified with representation at two hearings. The initial hearing occurred on October 26, 2020.[48] The ALJ took some testimony from Plaintiff, but then stopped the hearing.[49] The supplemental hearing occurred on February 21, 2021. Plaintiff provided additional testimony. The ALJ also took testimony from psychological expert, Jay M. Toews, Ed.D., and medical expert Jack Lebeau, M.D.[50] A vocational expert also provided testimony.[51] On March 30, 2021, the ALJ issued an unfavorable decision.[52] On

---

[43] A.R. 26; 20 C.F.R. § 404.1563.
[44] A.R. 17. In order to qualify for disability benefits under Title II, a claimant must have "insured status" and show her disability began on or before her date last insured. 42 U.S.C. §§ 423(a)(1), (c)(2), (d)(1)(A).
[45] A.R. 15.
[46] A.R. 101.
[47] A.R. 108.
[48] A.R. 15 (hearing decision), 67–83 (transcript of initial hearing).
[49] The ALJ explained "[t]he hard evidence isn't matching up to what I'm hearing. And because there are some records missing I don't feel comfortable with moving forward. Meaning, if you say your leg is giving out, then I would be a little hard pressed not to find at least an EMG or x-rays of knees or hips or something that might accurately explain the cause . . . at least in terms of how long I've been doing this job, it's not matching up." She then put the hearing back into rescheduling and encouraged Plaintiff's representative to submit all medical evidence and "explain to [Plaintiff] her concerns about what [she was] hearing versus what [she] actually see[s] in the medical record." A.R. 81.
[50] A.R. 39–51.
[51] A.R. 58–64.
[52] A.R. 15–28.

Charles L. v. Kijakazi  Case No. 1:21-cv-00023-RRB
Order Remanding for Further Proceedings  Page 8 of 20
Case 1:21-cv-00023-RRB   Document 20   Filed 11/29/22   Page 8 of 20

November 15, 2021, the Appeals Council denied Plaintiff's request for review.[53] On December 14, 2021, Plaintiff appealed the Commissioner's final decision to this Court.[54]

## IV. DISCUSSION

Plaintiff is represented by counsel in this appeal. Plaintiff asserts that the ALJ "failed to properly consider the nature and intensity of Plaintiff's limitations and failed to offer clear and convincing reasons for rejecting Plaintiff's subjective complaints."[55] Plaintiff seeks a remand for further administrative proceedings.[56] The Commissioner maintains the decision should be affirmed because substantial evidence supports the ALJ's findings.[57] For the reasons explained below, the Court reverses and remands for further administrative proceedings.

### A. The ALJ Erred in her Evaluation of Plaintiff's Subjective Complaints

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited."[58] First, the ALJ must determine whether the claimant has "objective medical evidence of an underlying impairment which reasonably could be expected to produce the pain or other symptoms alleged."[59] This does not require the claimant to show that his impairment could be

---

[53] A.R. 1.
[54] Docket 1.
[55] Docket 17 at 1.
[56] Docket 17 at 21.
[57] Docket 18 at 3, 8.
[58] *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017).
[59] *Id.* (quoting *Garrison*, 759 F.3d at 1014–15).

*Charles L. v. Kijakazi*                 Case No. 1:21-cv-00023-RRB
Order Remanding for Further Proceedings             Page 9 of 20

Case 1:21-cv-00023-RRB   Document 20   Filed 11/29/22   Page 9 of 20

expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms.[60]

Then, if the claimant has satisfied the first step and there is no evidence of malingering, the ALJ can only reject or discredit the claimant's symptom testimony by providing "specific, clear and convincing reasons for doing so."[61] The ALJ must make findings that support this conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony.[62]

Plaintiff reports ongoing pain and physical limitations after an accident that occurred on June 20, 2019. Specifically, Plaintiff reports pain in his back, numbness in his back and legs, swelling in his feet, and trouble walking, standing, sitting, and bending. He also reports frequent falls after his legs would "give out." He uses crutches to stabilize himself and often wears a back brace. He reports being unable to walk for more than 15 minutes or stand for more than 5 minutes at a time. He can sit for about 30 minutes before

---

[60] *Smolen*, 80 F.3d at 1282.
[61] *Id.* The Commissioner "continues to assert that the 'clear and convincing reasons' standard is inconsistent with the deferential substantial evidence standard set forth in 42 U.S.C. § 405(g), as well as agency regulations and rulings specifying the rationale its adjudicators should provide in support of their findings." Docket 18 at 3 (internal citations omitted). However, the Ninth Circuit has repeatedly reaffirmed the "specific, clear and convincing" standard applicable to review of an ALJ's decision to reject a claimant's testimony. *See, e.g., Garrison v. Colvin,* 759 F.3d 995, 1015, n.18 (9th Cir. 2014) (the government's suggestion that we should apply a lesser standard than "clear and convincing" lacks any support in precedent and must be rejected); *Burrell v. Colvin,* 775 F.3d 1133, 1137 (9th Cir. 2014) (rejecting the government's argument that the ALJ must only provide specific reasons and that clear and convincing reasons are not required); *Smith v. Kijakazi*, 14 F.4th at 1112 (9th Cir. 2021) (explaining the ALJ must specify which testimony they find not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination); *Thomson v. Kijakazi*, 2022 WL 1239464, at *1 (9th Cir. Apr. 27, 2022) (finding the ALJ committed reversible error by failing to provide clear and convincing reasons for discrediting Thomson's testimony).
[62] *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004).

Charles L. v. Kijakazi  Case No. 1:21-cv-00023-RRB
Order Remanding for Further Proceedings  Page 10 of 20
Case 1:21-cv-00023-RRB   Document 20   Filed 11/29/22   Page 10 of 20

he has significant pain in his legs that requires him to change position. On a good day, he has to lie down about half the day, but on bad days he spends the majority of the day lying down. He has about two good days per week at most. He reports continuing to struggle with insomnia. He complains that prescribed medications are ineffective and injections provide only temporary relief. He lives with his mother and does not have a driver's license, as he is unable to drive. He reports struggling with preparing meals and household chores and says his family helps him with activities around the house.[63]

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."[64] The ALJ further opined that while the objective medical "evidence suggests limitations, it does not reflect the level of impairment alleged" by Plaintiff.[65] The Commissioner argues "the ALJ reasonably determined Plaintiff's allegations were inconsistent with the medical evidence and his daily activities, and there was evidence of symptom magnification."[66]

---

[63] A.R. 75, 79–81 (10/26/2020 hearing testimony); A.R. 53–58 (02/08/2021 hearing testimony); A.R. 20 (hearing decision).
[64] A.R. 20.
[65] A.R. 20.
[66] Docket 18 at 2. The ALJ also cited inconsistencies in Plaintiff's statements regarding his drug use and a notation that Plaintiff moved to Alaska for work prior to his injury date. A.R. 22. However, the Commissioner "does not rely on these reasons in arguing ALJ's evaluation of Plaintiff's symptom testimony was supported by substantial evidence." Docket 18 at 7.

Charles L. v. Kijakazi    Case No. 1:21-cv-00023-RRB
Order Remanding for Further Proceedings    Page 11 of 20
Case 1:21-cv-00023-RRB   Document 20   Filed 11/29/22   Page 11 of 20

1. **The record does not contain affirmative evidence of malingering**

The ALJ determined the objective medical evidence could reasonably be expected to cause the alleged symptoms."[67] Once a claimant produces objective medical evidence of an underlying impairment that could reasonably produce some degree of the symptoms alleged, the ALJ can reject the claimant's symptom testimony only by providing "specific, clear, and convincing reasons."[68] However, this standard does not apply when there is evidence of malingering in the record.[69] The ALJ does not need to make a specific finding of malingering, as long as affirmative evidence in the record shows malingering.[70]

But neither the ALJ nor the Commissioner made an express finding of malingering. Nor do Plaintiff's "possible exaggerated symptoms" and "concerns of symptom exaggeration" in the medical records equate to affirmative evidence of malingering.[71] Although the ALJ noted that one provider observed that Plaintiff's pain was out of proportion for a ground level fall and had concerns about "malingering," that provider also prescribed Norco[72] to Plaintiff, noting that Plaintiff's mother seemed reliable

---

[67] A.R. 20.
[68] *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).
[69] *Carmickle v. Comm'r of Soc. Sec.,* 533 F.3d 1155, 1160 (9th Cir. 2008); *Morgan v. Comm'r of Soc. Sec.,* 169 F.3d 595, 599 (9th Cir. 1999).
[70] *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009) (citation omitted); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).
[71] *See Carmickle v. Comm'r, Soc. Sec. Admin.,* 533 F.3d 1155, 1160 (9th Cir. 2008); *Austin v. Saul,* 818 F. App'x 725, 728 (9th Cir. 2020). Unpublished dispositions and orders are not precedent, but such unpublished dispositions and orders issued on or after January 1, 2007, may be cited to by the courts of the Ninth Circuit. *See* U.S. Ct. of App. 9th Cir. Rule 36-3; Fed. Rule of App. 32.1.
[72] Norco is a is a combination medication containing hydrocodone and acetaminophen. Norco is "used to relieve pain severe enough to require opioid treatment and when other pain medicines did not work well enough or cannot be tolerated." https://www.mayoclinic.org/drugs-supplements/hydrocodone-and-acetaminophen-oral-route/description/drg-20074089.

and very concerned.[73] While other providers also noted Plaintiff's pain seemed disproportionate to imaging, they did not discount his complaints, but continued to order additional testing and to prescribe controlled substances, such as hydrocodone, oxycodone, and gabapentin.[74]

The ALJ also stated that Plaintiff would "arrive to appointments in apparent distress, then appear to be in less pain while talking and distracted."[75] At the one appointment the ALJ cited, the provider noted he "initially seems to be in distress, but as he is talking he seems to be in less pain."[76] While the ALJ's addition of "distracted" suggests symptom magnification, the provider made no indication that she suspected exaggeration or malingering.[77] Further, the record as a whole shows numerous complaints and observations about Plaintiff's pain.

The ALJ also cited to a medical provider's note stating "[t]here is no evidence of neurological compression or injury to explain the [Plaintiff's] symptoms. His symptoms . . . are out of proportion to objective findings on physical examination and electrodiagnostic exam."[78] She omits the notes indicating Plaintiff was "grimacing in pain" and although he was able to arise from a seated position, he was limping on his left leg.[79] She also fails to mention that directly after the language she quoted, the provider goes on

---

[73] A.R. 658–59.
[74] *See, e.g.,* A.R. 645, 742, 746, 752. The consistent use of strong opioid medications, cannot accurately be described as "conservative treatment." *See Bucknell v. Berryhill,* 2018 WL 6198459 at *4 (C.D. Cal. 2018) (citing cases).
[75] A.R. 21 (citing A.R. 648).
[76] A.R. 648.
[77] *Id.*
[78] A.R. 21 (citing A.R. 705).
[79] A.R. 705.

to explain, "[o]f course, it is still possible to have nerve irritation in the absence of any evidence of nerve injury, but he has not received any long-term benefit from lumbar spine injections. I understand there is an MRI of the lumbar spine pending, which may help inform the source of the patient's symptoms."[80] Therefore, although the provider did note the reported pain was inconsistent with the exam, she opined that there were other potential causes and continued to order additional testing.

The longitudinal record does not contain affirmative evidence that Plaintiff was malingering, and, therefore, the ALJ was required to support her credibility finding with specific, clear, and convincing reasons.

2. **The ALJ did not provide specific, clear, and convincing reasons for rejecting Plaintiff's testimony**

The specific, clear and convincing standard is "the most demanding required in Social Security cases"[81] and is "not an easy requirement to meet."[82] The ALJ must make findings that support this conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony.[83] Ninth Circuit cases "do not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits."[84] Nonetheless, the ALJ

---

[80] A.R. 705.
[81] *Garrison*, 759 F.3d at 1015.
[82] *Trevizo*, 871 F.3d at 678–79.
[83] *Moisa v. Barnhart,* 367 F.3d 882, 885 (9th Cir. 2004).
[84] *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020).

*Charles L. v. Kijakazi*  Case No. 1:21-cv-00023-RRB
Order Remanding for Further Proceedings  Page 14 of 20
Case 1:21-cv-00023-RRB   Document 20   Filed 11/29/22   Page 14 of 20

still must specifically identify "what testimony is not credible and what evidence undermines the claimant's complaints."[85]

In the hearing decision, the ALJ initially summarizes some of Plaintiff's allegations in three paragraphs under the heading "Allegations."[86] Then, although she sets forth few specific complaints throughout the "Analysis" section, she generally refers to Plaintiff's overall allegations without specifically "identif[ing] the testimony she found not credible [or] link[ing] that testimony to the particular parts of the record supporting her non-credibility determination."[87] This discussion is insufficient to meet the requirements set forth in the caselaw and does not permit for meaningful review.[88]

Moreover, the ALJ's evaluation of Plaintiff's subjective complaints are not supported by the longitudinal record. For example, the ALJ contends Plaintiff's "presentation at his initial visit after his fall is inconsistent with his allegations." She cites to the notation that he "appeared to the treatment facility showing no signs of acute distress, except with certain movements that made his left hip painful."[89] She then states during this initial visit, Plaintiff's "back was not tender and did not show signs of trauma. Physical examination of [ ] lower extremities was also normal. Initial imaging of [Plaintiff's] hip

---

[85] *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).
[86] A.R. 20.
[87] *Brown-Hunter*, 806 F.3d at 494. *See also Wade v. Saul*, 850 F. App'x 568, 569 (9th Cir. 2021) (citing *Lambert v. Saul*, 980 F.3d 1266, 1277–78 (9th Cir. 2020)) ("ALJ's detailed overview of [a claimant's] medical history—coupled with a nonspecific boilerplate conclusion that [his] testimony [i]s "not entirely consistent" with [his] medical treatment—is not enough to satisfy the minimal requirements for assessing credibility").
[88] *See Brown-Hunter* at 494 (remanding because "[a court] cannot discern the agency's path" without "any reviewable reasons" for the credibility determination).
[89] A.R. 21.

and lumbar spine were unremarkable as well."[90] She fails to include that within the same pages, the medical record also notes that when Plaintiff arrived at the hospital via Emergency Medical Services, he was in quite a bit of discomfort; concerned about sleeping; hesitant to move the right leg; and given a note to excuse him for work the following day and placed on light duty through the end of the week.[91]

    The ALJ goes on to cite additional records that "document normal reflexes, strength, sensation" and other records demonstrating Plaintiff "could get on and off the exam table without assistance . . . had no signs of lower extremity atrophy and no true neurological weakness . . . and denied weakness in the lower extremities."[92]

    While the ALJ concedes "some records document crying during the exam; antalgic, limping gait; tenderness to palpitation; muscle tenderness, tension and spasm; reduced range of motion; reduced extremity strength and sensation; and positive straight leg testing[,]" she proceeds to selectively reference the record to support the denial of benefits. For example, the ALJ cited to one exam where Plaintiff could get on and off the exam table without assistance.[93] This specific record also notes Plaintiff was ambulating with crutches and only able to briefly walk.[94] The ALJ also relied on notations that Plaintiff was able to walk on his heels,[95] but ignored notes from the same visit stating he was unable to walk on his toes, demonstrated a severely antalgic gait, was limping on the left side, had

---

[90] A.R. 21 (citing AR. 660–62).
[91] A.R. 661–62.
[92] A.R. 21.
[93] A.R. 21 (citing A.R. 640).
[94] A.R. 640.
[95] A.R. 21 (citing A.R. 645, 649, 700–02, 744).

*Charles L. v. Kijakazi*                      Case No. 1:21-cv-00023-RRB
Order Remanding for Further Proceedings                Page 16 of 20

Case 1:21-cv-00023-RRB  Document 20  Filed 11/29/22  Page 16 of 20

a positive straight leg test on the left, grossly limited range of motion, SI joint tenderness, and his paraspinal musculature was tender to palpation.[96] Similarly, during another exam the ALJ relied on, the record also noted reduced range of motion, joint pain and stiffness, positive lumbar facet loading maneuver, positive straight left raise on left, SI joint tenderness on left, Patrick's test positive on the left, tight on the right, compression test position on the left, and Gaenslen's test positive on the left.[97]

The ALJ also points to a visit where Plaintiff reported, "[n]o weakness or numbness in lower extremities, on numbness in the SI joint region[,]" but again overlooks additional notes that Plaintiff reported falling the previous Sunday and was experiencing excruciating pain."[98] The ALJ then cites to one instance where Plaintiff reported he could return to all his usual activities, including work.[99] Notably, within the same paragraph, the record also says Plaintiff reported increase in back pain and recently was sent home from work due to his back pain symptoms.[100] Plaintiff also reported having been terminated from his previous part-time job only a month earlier for being unable to meet the demands of that job.[101] He later reported that although he was trying, he was unable to hold a job because the medication regime was not improving his quality of life.[102] His providers

---

[96] A.R. 701.
[97] A.R. 744.
[98] A.R. 649.
[99] A.R. 22 (citing A.R. 460).
[100] A.R. 406.
[101] A.R. 76. In May 2020, Plaintiff reported working 17 hours per week. He continued to report pain, and by June 2020, he was terminated.
[102] A.R. 742.

noted he unsuccessfully tried multiple conservative treatments including physical therapy, medications, and multiple injections.[103]

Additional records not referenced by the ALJ note physical examinations which were significant for a positive straight leg raise on the left producing left radicular pain down his left.[104] And again, during another objective medical examination, Plaintiff was in obvious discomfort, displayed tenderness to palpitation of the left SI joint region, had limited range of motion in his left hip, positive FADER and FABER tests on the left, and had a very antalgic gait favoring the left.[105] The record suggests Plaintiff sometimes appeared to be dragging his right leg[106] and used a crutch.[107] The record show multiple injections[108] and completion of physical therapy.[109] Plaintiff was also referred for surgical spine consultation and consideration of left sacroiliac joint fusion.[110] He was prescribed multiple medications, including gabapentin, trazadone, hydrocodone, and oxycodone.[111] The ALJ also failed to consider the effects Plaintiff's medications may have on his ability to work.

Finally, the ALJ opined the Plaintiff's activities of daily living were inconsistent with his complaints. Plaintiff "does not dispute that he intermittently tried to stay active by walking, exercising, and swimming to alleviate pain."[112] Nothing in the

---

[103] A.R. 740.
[104] A.R. 698.
[105] A.R. 472.
[106] A.R. 353, 356.
[107] A.R. 360, 640.
[108] A.R. 461–62, 637–38, 700, 752.
[109] A.R. 473, 640.
[110] A.R. 461.
[111] A.R. 645, 742, 746, 752.
[112] Docket 19 at 3 (citing 258–59, 407, 416).

record describes how often or for how long Plaintiff performed these activities. Instead, the record documents rare instances of increased activity, typically followed by periods of increased pain, inability to sustain activities, and flares of pain.[113]

While the Commissioner contends that the ALJ reasonably relied on evidence of inconsistencies,[114] the ALJ cited only one page concerning Plaintiff's inconsistent report of his prior illicit drug use. Moreover, "[o]ccasional symptom-free periods—and even the sporadic ability to work—are not inconsistent with disability."[115] The ALJ is required to review the record as a whole. It is "error for an ALJ to ignore or misstate the competent evidence in the record in order to justify his conclusion."[116] Here, the ALJ overlooked relevant evidence and did not provide clear and convincing reasons to discount Plaintiffs subjective complaints.

### B. The Proper Remedy is a Remand for Further Proceedings

The Supreme Court's "ordinary remand rule" applies in this case.[117] Under this rule, if "the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."[118] Having reviewed the ALJ's decision, the administrative record, and the parties' briefs, the Court concludes that

---

[113] A.R. 360, 410, 412–14.
[114] Docket 18 at 5.
[115] *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995).
[116] *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir.1984).
[117] *Treichler*, 775 F.3d at 1099 ("The ordinary remand rule applies equally to Social Security cases").
[118] *Treichler*, 775 F.3d at 1099 (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)).

the ALJ committed legal error by failing to provide specific, clear, and convincing reasons for discounting Plaintiff's subjective complaints. However, because it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated, the proper remedy is reversal and remand to the SSA for further proceedings, including a new hearing and decision.

## V. CONCLUSION

The Court finds that the ALJ's determinations are not free from legal error and are not supported by substantial evidence. Accordingly, IT IS HEREBY ORDERED that Plaintiff's request for relief at Docket 17 is **GRANTED**, and this matter is **REVERSED AND REMANDED** for further proceedings consistent with this Decision and Order.

The Clerk of Court is directed to enter a final judgment accordingly.

IT IS SO ORDERED this 29th day of November, 2022, at Anchorage, Alaska.

/s/ Ralph R. Beistline
RALPH R. BEISTLINE
Senior United States District Judge